HOWARD T. HOSKINS v. AUSTIN-WESTERN ROAD
MACHINE COMPANY AND ANOTHER.[1]

December 29, 1933.

No. 29,648.

[1]Reported in 251 N. W. 909.

*Roy A. McDonald* and *Barrows, Stewart, Jackson & Junkin*, for relator.

*L. N. Foster* and *E. A. Linnee*, for Austin-Western Road Machine Company, employer, and Travelers Insurance Company, its insurer, respondents.

*HOLT, Justice.*

Certiorari to review a decision of the industrial commission denying relator compensation for the loss of a leg in an accident. The decision is based on the finding that the accident which caused the injury did not arise out of and in the course of the employment. So the sole question is whether there is evidence fairly sustaining the finding.

There is no conflict in the evidence as to the facts. Prior to 1925 relator had been in the employ of the respondent machine company as salesman and branch manager. In the year mentioned he was transferred to St. Paul, Minnesota, as branch manager of Minnesota, North Dakota, South Dakota, and 12 counties in Wisconsin. As manager he hires salesmen for his territory. In the summer of 1931 relator deemed a territory in South Dakota needed a man in charge, and inquiries had led him to think one 'Munweiller of Ortonville would be suitable. Relator was acquainted with one Evenson, a druggist in Minneapolis. Evenson was living at his summer home at Nevis, near Walker, Minnesota. On July 20, 1931, relator started on a trip over his territory, driving in an automobile. He took his golf clubs and fishing tackle along. He planned to go as far as Grand Forks, enroute calling upon contractors and business prospects at Anoka, St. Cloud, Little Falls, Brainerd, Walker, and Pine River. From Walker he went to Evenson's cot-

tage, and his errand was to learn more of Munweiller, since he knew that Evenson was well acquainted with him. He also knew that Evenson was fond of going fishing in his company. They went out fishing the afternoon he arrived at the cottage. He remained overnight, and the next morning the two again went fishing. When they returned to the cottage about two p. m. the kitchen pump was not working. They undertook to pull up the pipe. A hole was cut in the roof above the pump, relator went on top of the roof to pull the pipe up through the hole cut, the pipe parted, relator lost his balance and fell, fracturing his foot at the ankle. Complications set in and resulted in amputation of the foot and part of the leg.

It seems to us that from the situation indicated by the recital the commission could well conclude that when relator undertook to help Evenson repair the pump, if not sooner, there was a departure from the sphere of his employment with the respondent machine company so that the accident did not arise out of or in the course of that employment. Evenson was not a prospect whose good will had to be cultivated or retained by favors extended such as the assistance relator rendered. As between relator's fishing trip and the errand to learn of Munweiller's qualification for the position intended, the commission could conclude that the first was the sole purpose of the trip to Nevis. It is true that relator had a wide discretion as to the method of doing his work. He had to travel by automobile or other transportation. He had a vast territory to oversee and for which to obtain the needed salesmen and managers. And he was left to his own devices to obtain the information concerning the qualification of the men wanted.

In circumstances somewhat similar to those of relator courts have sustained findings that an accident arose out of and in the course of the employment when it appeared that the employe when injured was engaged in cultivating the good-will of a customer or prospective customer of the employer by rendering some favor or service for such person. Relator cites Ocean A. & G. Corp. v. Industrial Comm. 32 Ariz. 265, 257 P. 641; Hartford A. & I. Co. v. Industrial Acc. Comm. 202 Cal. 688, 262 P. 309, 58 A. L. R. 1392; Pacific Ind. Co. v. Industrial Acc. Comm. 105 Cal. App. 535, 288

P. 129; Solar-Sturges Mfg. Co. v. Industrial Comm. 315 Ill. 352, 146 N. E. 572; Chase v. Emery Mfg. Co. 271 Pa. 265, 113 A. 840; Commercial C. I. Co. v. Strawn (Tex. Civ. App.) 44 S. W. (2d) 805. In each one the commission or court found that the injury was from an accident arising out of and in the course of the employment. In some of the states from which the above decisions came the compensation act is broader than ours, notably Texas. It also appears in each case that the employe when injured was rendering some service or benefit to the employer's customer or prospective customer, and that this was considered by the employer a necessary part of his business. It is to be noted that in the Arizona case the finding of the commission that the employe was injured in an accident arising out of and in the course of the employment was held not supported by the evidence. In our opinion, Engsell v. Northern Motor Co. 174 Minn. 362, 219 N. W. 293, presents facts much more persuasive for a finding upon which to award compensation than the present case. There the employe was engaged in cultivating the good-will of a prospective customer when the accident causing his death took place. In the instant case Evenson was not a customer or prospective customer of relator's employer. Evenson and relator were warm personal friends, but the former's business could have no connection with any business of relator's employer. If the commission deemed the trip to Evenson's cottage to have been in the course of the employment, it could nevertheless conclude that the purpose was fully accomplished, at least before the two started out on the second fishing trip. So that during relator's stay at the Evenson cottage on that day he was not within the scope of his employment. The binding effect of the findings of the commission on this court is sufficiently discussed in the cases cited in the Engsell case, 174 Minn. 362, 219 N. W. 293.

The writ is quashed, and the decision is affirmed.