LUELLA OLSON v. MYRON FELIX AND ANOTHER.

146 N. W. (2d) 866.

December 9, 1966—No. 40,012.

*Quinlivan, Quinlivan & Williams* and *Richard R. Quinlivan,* for relators.

*Theodore F. Neils,* for respondent.

SHERAN, JUSTICE.

Certiorari to review a decision of the Industrial Commission awarding benefits to the surviving wife of Lawrence Olson, deceased employee of Myron Felix. The employer-relator and Fidelity & Casualty Company of New York, insurer-relator, contend that the record compels a finding that intoxication was the proximate cause of the employee's fatal injury and that recovery should be denied under the provisions of Minn. St. 176.021, subd. 1.

From the record it appears that the decedent was employed by a road contractor as a grader operator. He was so employed for a period of about 15 years and on one occasion was taken off the job because of drinking. His employer testified, however, that during the year of the accident he had not been drinking on the job. On the day of the accident he left home at about 8 a. m. and reported to his employer for work between 9 and 9:30 a. m. There was no evidence that he had been drinking at that time. He was assigned to do grading work on a county road. In his work he operated a road grader with tandem wheels, powered by a diesel engine. The machine weighed about 28,000 pounds. On the open road the grader traveled at about 20 miles an hour and moved at about 3 miles an hour when engaged in grading. At about 12:30 p. m. a farmer noticed the grader in a field adjoining the road and observed that it was moving at a "[r]eal slow speed, just like idling." He observed the body lying in the field and asked a neighboring farmer to report the fact to the sheriff. The tracks of the grader were visible, leading off the road into the field. The body was lying in the track of the left rear wheel between the grader and the road. Decedent's toolbox, which weighed about 20 pounds, was found near the body, as were a wrench and screwdriver. An examination of the grader disclosed that a small piece of the hydraulic control valve was broken which interfered with the steering of the grader and that the machine had been moved into the field to repair the defect.

The employee was dead at the time the doctor arrived. It was determined that the cause of his death was "fractures of the skull and injuries of the brain and crushing of the chest." The autopsy disclosed there was an alcoholic content in his system of 0.3 percent.

The referee found as facts that the employee "sustained a personal injury which arose out of and in the course of his employment resulting in his death" and that "the defense of intoxication asserted by the respondents herein as being the proximate cause of the death of the employe was not supported by the evidence." The findings were reviewed by the Industrial Commission and affirmed in a unanimous opinion.

It is not disputed by relators that decedent met his death in the scope of his employment and that his death is compensable "unless * * * the intoxication * * * is the proximate cause of the injury." Relators concede that the burden of proof of the defense of intoxication is upon the employer. In an able and persuasive argument relators assert that the evidence compels the conclusion that intoxication was in fact the proximate cause of injury and death. It is urged: "Whenever intoxication predominates as a factor in causing injury or death to the extent that other factors become an occasion rather than a cause, then intoxication is the proximate cause." Relators point to the record which contains the testimony of two pathologists to the effect that a person with the percentage of alcoholic blood content found in the decedent would lack rationality, would have poor judgment, and would be close to a comatose state. On the other hand, however, the record establishes that shortly before the accident took place, the decedent had completed a good grading job; that he had the judgment to turn off the road into the field to repair a defect in the equipment; and in turning into the field had raised the blade of the grader so it could proceed through a shallow ditch. The evidence established that he removed a toolbox weighing 20 pounds from the cab of the machine and chose the tools necessary to make the required repairs. These tools were found lying alongside his toolbox.

Relators rely for reversal on our decision in Fogarty v. Martin Hotel Co. 257 Minn. 398, 101 N. W. (2d) 601. In that case we affirmed the Industrial Commission's holding that the death of an intoxicated employee did not arise out of and in the course of his employment. At the time of the accident which caused the death the employee had departed from the course of his employment. We there said (257 Minn. 405, 101 N. W. [2d] 606):

"In this case the employee concededly was 'so drunk' that he could no longer perform any of the usual duties of his employment."

Not only the clinical evidence but also the surrounding facts and circumstances established a state of intoxication which left the employee practically helpless. We fully discussed the law relating to the defense of intoxication in that case, quoting State ex rel. Green v. District Court, 145 Minn. 96, 98, 176 N. W. 155, 156, as follows:

"In controversies under the Workmen's Compensation Act, the contributory negligence of an injured employee is not a bar to his right to compensation. The intoxication of a person injured * * * constitutes a bar to relief under the compensation act only when shown to be the proximate, as distinguished from the contributory, cause of the injury complained of. This distinction necessarily follows from the express language of the statute, by which contributory negligence of the employee is expressly excluded from consideration in determining the liability of the employer."

An important distinction between the case before us and the Fogarty case is that in Fogarty we were asked to reverse the Industrial Commission's order denying compensation. Here we are asked to reverse the order of the Industrial Commission granting compensation. In Fogarty we said (257 Minn. 403, 101 N. W. [2d] 605):

"In cases of this kind we are dealing with the cause of the injury as distinguished from the question of whether either employer or employee was at fault in the technical sense.

"Whether the intoxication of the injured workman constitutes the proximate cause presents a question of fact for determination by the commission.

"Where the evidence, whether direct or circumstantial, is such that it reasonably supports the commission's findings, applicable rules require us to sustain it.

"Where reasonable minds might reach different conclusions based upon inferences which may reasonably be drawn from the evidence, the determination of the factfinder is conclusive.

"Where circumstantial evidence reasonably permits different infer-

ences, the choice of the inference to be drawn rests with the factfinder. In Burke v. B. F. Nelson Mfg. Co. 219 Minn. 381, 388, 18 N. W. (2d) 121, 124, we said:

"'Where, upon circumstantial evidence in civil cases, there is a reasonable basis for diverse inferences, the choice of an inference made by the fact-finding body is to be sustained, unless (1) the conflicting inferences stand in equilibrium so that reasonable minds cannot prefer one over another, or unless (2) the choice of inference is otherwise based on mere conjecture and speculation, or unless (3) the inference adopted is manifestly and undeniably contrary to the weight of the evidence as a whole. Clearly, it is not necessary that the evidence in support of the inference adopted must outweigh other reasonable inferences so as to demonstrate their impossibility.'"

The opinion of the Industrial Commission contains a succinct statement of the facts as they appear in the record. It states:

"Despite the uncontroverted evidence that the alcoholic content of the blood was tantamount to intoxication, there is no direct evidence that the condition caused the fatal injuries. The testimony is that an adequate job of grading was performed; that the blade of the grader was raised before the machine was driven off the road to a spot where it could be repaired; that the operator removed his tool box and had the proper tools beside him; and that apparently he was in the act of attempting to repair the machine, when, unexplainedly, it began to move and crushed his head and chest.

"The machine was not steering properly and he sought to correct the difficulty. From the testimony, one cannot infer that the deceased attempted to repair the faulty mechanism while the motor was running only because he was drunk. He may have been negligent in not stopping the motor, but we can take judicial notice that scores of workers, unquestionably sober, are injured each year when they attempt to clean, adjust or repair various kinds of moving machinery.

"The employer-insurer has not proved that intoxication was the proximate cause of the employe's death. The findings and award by the referee of compensation to the widow are affirmed."

340

While we agree that the commission might well have found otherwise, we are required to conform to our oft-repeated rules relating to the review of Industrial Commission findings. These rules apply with equal force, both to findings with reference to proximate cause and to those concerning whether or not the injury arose out of and in the course of the employment.

While it may be true that the intoxication of the decedent was a contributory factor in the accident, we cannot say that the commission was wrong in determining under the evidence that the intoxication was not the proximate cause. That conclusion is supported by circumstantial and physical evidence. It is known that individuals have different tolerances for alcohol and that, as the commission pointed out in its opinion, sober persons are sometimes injured while working under motor vehicles. Respondent is allowed $250 attorney's fees in this court.

Affirmed.